**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | | **Criminal No. SAG-19-0500** |
| **v.** | * | |
| **JONATHAN WALL** | * | |
| **Defendant.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR A SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. § 3582(c)(2)**

The United States of America, by undersigned counsel, hereby responds in opposition to Defendant Jonathan Wall's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2). Wall's sentence of 90 months' imprisonment was not driven by the Sentencing Guidelines range, and his sentence remains sufficient but not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a). Wall's motion should be denied.

**BACKGROUND**

**A.      The Charges and Wall's Pretrial Fugitive Status.**

On October 22, 2019, Wall and ten Co-Defendants were charged in an Indictment with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count One). See ECF No. 1. Several Co-Defendants were also charged with substantive drug offenses. Id.

A few months before the Indictment was returned, the government advised Wall and his counsel that Wall would be charged a drug conspiracy case. See ECF No. 140 (Memorandum Opinion and Order Denying Wall's Motion for Review of Detention Order) at 1. In a subsequent meeting, the government reiterated to Wall's counsel that Wall would be charged. Id. at 2. An

initial appearance was scheduled for Wall on November 14, 2019.  See ECF Nos. 52.  Wall did not appear, and the Court issued an arrest warrant.  See ECF Nos. 52, 53.  For more than seven months, Wall was a fugitive.  He had fled to Guatemala.  See ECF No. 140 at 2.

Wall was arrested on June 29, 2020 in Los Angeles, California, after he returned to the United States.  Wall had his initial appearance in United States District Court for the Central District of California the same day.  See ECF No. 94.  On July 7, 2020, after a detention hearing in the Central District of California, Wall was ordered detained.  See ECF No. 94-1.  Wall was subsequently transported to Baltimore and had his initial appearance on August 14, 2020.  ECF No. 97.

Wall filed a Motion for Review of his Order of Detention with this Court on October 6, 2020.  ECF No. 128.  In a Memorandum Opinion and Order dated November 6, 2020, this Court denied Wall's motion.  ECF No. 140 at 5.  This Court rejected Wall's explanation that his flight to Guatemala was the result of a "panicked mistake" and concluded that, "[i]n a case like this, where the defendant has already demonstrated an ability and a predisposition to use a fake passport to flee the country for an extended period, there are simply no conditions that could reasonably prevent such flight from happening again."  Id. at 4-5.

On May 6, 2022, following a five-day jury trial, Wall was found guilty of conspiracy to distribute and possess with intent to distribute controlled substances.  See ECF No. 238.  The jury concluded that 1,000 kilograms or more of marijuana was involved in the offense.  Id.

## B.   The Trial Evidence.

The evidence at trial established that between January 2016 and April 2019, Wall conspired with others to distribute and possess with the intent to distribute between 1,000 to 3,000 kilograms of marijuana.  See ECF No. 292 (Amended Presentence Report dated October 31, 2022), ¶ 4.

In 2016, Wall was distributing marijuana while living in an apartment in Towson. The evidence established that Wall supplied Co-Defendant 1 with between 5 and 10 pounds of marijuana per week for a twelve-month period, totaling between 260 to 520 pounds for that year. Id. ¶ 5. After living in Towson for about a year, Wall moved into a house in the Mount Vernon area of Baltimore City. Wall was living there with Co-Defendant 1. Id. ¶ 6. Co-Defendant 1 testified at trial that while living with Wall, Co-Defendant 1 obtained at least 25 pounds of marijuana every two weeks from Wall. Id. Co-Defendant 1 redistributed the marijuana that he obtained from Wall to other customers for a profit, and he also delivered marijuana to some of Wall's other customers at Wall's direction. Id. Co-Defendant 1 eventually moved out of the Mount Vernon house after seeing that Wall had between 20 to 30 large cardboard boxes stacked throughout the house, each of which contained approximately 25 pounds of marijuana. The approximate quantity of the marijuana in these boxes was between 500 and 750 pounds. Id.

The evidence at trial also established that while Wall lived in Mount Vernon, he supplied large quantities of marijuana to Co-Defendant 2, Co-Defendant 3, Co-Defendant 4, and Co-Defendant 5. Id. ¶ 7. These individuals redistributed the marijuana to their own customers and paid Wall with the money from their sales. Co-Defendant 3 obtained approximately 30 pounds of marijuana each time he saw Wall. He testified that he paid Wall tens-of-thousands of dollars. Id. Co-Defendant 4 obtained between 50 and 100 pounds of marijuana at a time from Wall, and he would typically pay Wall $100,000 or more. The evidence also established that Wall supplied Co-Defendant 2 with between 50 to 250 pounds of marijuana, and he supplied Co-Defendant 5 with 100 pounds of more of marijuana. Id.

Wall eventually moved to California, but he continued to distribute marijuana in the Baltimore area with the help of Co-Defendant 2, Co-Defendant 6, and others. Id. ¶ 8. Specifically,

Wall sourced the marijuana in California and arranged to have it shipped to Baltimore.  Once the marijuana arrived in Baltimore, Co-Defendant 2, Co-Defendant 6, and others received the marijuana, stored it in a stash location arranged by Wall, and distributed the marijuana to others. Id.  The evidence at trial showed that the distribution activities of Co-Defendant 2 and Co-Defendant 6 were directed by Wall.  Id.

Wall used several methods to ship the marijuana to Maryland.  One method was packing marijuana into FedEx shipping tubes, each of which contained approximately 8 to 10 pounds of marijuana.  Id. ¶ 10.  Wall also used a vehicle trailer with a false bottom to ship the marijuana. The false bottom was able to store approximately 200 pounds of marijuana at a time.  The evidence at trial established that Wall arranged approximately five marijuana deliveries from California to Baltimore using the vehicle trailer, for a total of approximately 1,000 pounds of marijuana.  Id.  In addition, Wall used a commercial freight shipping service to make between five and eight shipments of at least 500 pounds of marijuana at a time.  Id.  The total amount of marijuana Wall shipped to Baltimore for redistribution using the commercial freight service was between 2,500 and 4,000 pounds.  Id.

When the marijuana arrived in Baltimore in the vehicle trailer or in the freight shipments, Wall's co-conspirators unloaded the marijuana inside of different local warehouses.  Id. ¶ 11.  Once the marijuana was unloaded, it was taken to a stash location in Baltimore.  From there, Co-Defendant 2 and Co-Defendant 6 sold the marijuana to customers and collected money that was owed to Wall.  Id.

While Wall was living in Maryland, the evidence at trial established that he was directly paid hundreds-of-thousands of dollars in cash for the marijuana that he sold.  But after Wall moved to California, he was paid for the marijuana that he supplied in several ways.  Id. ¶ 12.  The

evidence at trial established that several individuals made cash deposits into bank accounts at Wall's direction in amounts that were slightly less than $10,000.  These bank accounts were in nominee names.  Id.  In addition, large sums of money were sent back to Wall inside of the false bottom of the vehicle trailer.  Id.  Wall was also stopped at two airports with large sums of cash, which were seized be law enforcement and administratively forfeited because the cash was derived from a prohibited source.  Specifically, in October 2016, approximately $95,560 was seized from Wall at the San Francisco International Airport, and in May 2018, approximately $26,970 was seized from Wall at the Phoenix Sky Harbor Airport.  Id.

When search warrants were executed in April 2019 in the Baltimore area, investigators found tally sheets, ledgers, large sums of money, and significant quantities of marijuana at locations associated with Wall's Co-Defendants.  Id. ¶ 12.  At one location, investigators found over $850,000 in cash.  Id.  Co-Defendant 2 and Co-Defendant 6 testified at trial that this money was collected to pay Wall for marijuana that Wall supplied to them for distribution.  Id.  The evidence at trial also established that the tally sheets reflected quantities and strains of marijuana that Wall supplied to Co-Defendant 2, Co-Defendant 6, and others and that the money reflected on the ledgers was for marijuana supplied by Wall and sold by members of the conspiracy.  Id.

Regarding the quantity of marijuana that was involved in this conspiracy, the evidence established that Wall and his co-conspirators supplied the following customers with the following quantities of marijuana: (i) Co-Defendant 1, approximately 2,000 pounds; (ii) Co-Defendant 3, approximately 720 pounds; (iii) Co-Defendant 4, approximately 500 pounds; (iv) Co-Defendant 5, approximately 1,200 pounds; and (v) Co-Defendant 7, approximately 210 pounds.  Id. ¶ 14.  In total, these customers obtained approximately 4,630 pounds of marijuana from Wall.  Id. at 15.  In

addition, the evidence at trial established that Co-Defendant 2 and Co-Defendant 6 personally received between approximately 3,000 and 4,000 pounds of marijuana from Wall.  Id.

    **C.**    **Motion to Vacate Judgment, Post-Verdict Sentencing Agreement, and Sentencing Hearing.**

On May 8, 2022, two days after the jury returned its guilty verdict in this case, Wall's trial counsel filed a motion to withdraw.  ECF No. 232.  On May 19, 2022, Judge Copperthite granted the motion and appointed the Office of the Federal Public Defender to represent Wall.  ECF Nos. 247, 249.  On September 30, 2022, Wall's new counsel filed a Motion to Vacate Judgment Pursuant to Federal Rule of Criminal Procedure 33.  See ECF No. 287 (filed under seal).  While the Motion to Vacate Judgment was pending, the parties notified the Court that they had reached a Post-Verdict Sentencing Agreement, and they requested that a sentencing hearing be scheduled. See ECF Nos. 343 (Sentencing Transcript) at 2.

Sentencing was scheduled for October 27, 2022.  ECF No. 288.  The original Presentence Report docketed in this case determined that Wall's base offense level was 30 to account for between 1,000 kilograms and 3,000 kilograms of marijuana under U.S.S.G. § 2D1.1(c)(5).  See ECF No. 281 (Presentence Report dated August 22, 2022) ¶ 8.  The original PSR also determined that Wall should receive a four-level increase pursuant to U.S.S.G. § 3B1.1(a) because Wall was an organizer or leader of a criminal activity that involved five for more participants or was otherwise extensive.  Id. ¶ 11.  Wall did not have any prior convictions, so his Criminal History Category was I.  Id. ¶ 21.  Based on a final offense level of 34 and a Criminal History Category of I, the original PSR determined that Wall's Sentencing Guidelines range was 151 to 188 months' incarceration.  Id. ¶ 42.  In addition, Wall was subject to a statutory minimum sentence of 10 years' imprisonment and a maximum of life imprisonment.  Id. ¶ 41.

As noted above, the parties entered into a Post-Verdict Sentencing Agreement, which differed from the original PSR in several ways. At the sentencing hearing, Wall was placed under oath and the Court carefully reviewed the parties' Post-Verdict Sentencing Agreement with him. ECF No. 343 at 4-9. Pursuant to that agreement, Wall agreed (among other things) to withdraw his Motion to Vacate Judgment with prejudice. See ECF No. 291-1 (Post-Verdict Sentencing Agreement) ¶ 5. In exchange, the government agreed that Wall had satisfied the requirements of the safety valve under U.S.S.G. § 5C1.2 and that he was entitled to a two-level downward adjustment under U.S.S.G. § 2D1.1(b)(18). Id. ¶ 8. By agreeing that Wall satisfied the requirements of the safety valve, the government was no longer seeking a four-level increase to the offense level based on Wall's role as an organizer or leader, as recommended in the original PSR. See ECF No. 343 at 10 (government counsel at the sentencing hearing explaining that "the Government is not pursuing the role enhancement that is set forth in the original draft of the PSR, but of course that's implicit with the safety valve determination"). Moreover, the parties' agreement allowed Wall to receive a sentence that was below the statutory minimum. See 291-1 ¶ 8 (citing 18 U.S.C. § 3553(f)). The Post-Verdict Sentencing Agreement also contained a joint sentencing recommendation. Specifically, the parties jointly recommended a sentence of "90 months of imprisonment in the custody of the Bureau of Prisons, which they agree is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a)." Id. ¶ 11.

The Court accepted the parties' agreement as to the calculation of the Sentencing Guidelines. ECF No. 343 at 9-10. Based on a final offense level of 28 and a Criminal History Category of I, the Guidelines range was 78 to 97 months' incarceration. Id. at 10. An Amended

Presentence Report was prepared to reflect the Court's determination as to the Sentencing Guidelines calculation. See ECF No. 292 (Amended Presentence Report dated October 31, 2022).

At sentencing, counsel for each party provided brief statements in support of the jointly recommended sentence of 90 months' incarceration. To be sure, counsel for the government and defense counsel both noted that the recommended sentence was within the Sentencing Guidelines range. See ECF No. 343 at 12 (government counsel explaining, "I think in some cases the guidelines get things exactly right, and here the recommended sentence is a guideline sentence"); id. at 13 (defense counsel noting that the recommended sentence "falls within the guidelines range contemplated by the parties' agreement"). But in justifying the recommended sentence to the Court, the parties focused their arguments on the other Section 3553(a) factors. Id. at 11-13. For example, government counsel explained that this was a serious offense involving substantial quantities of marijuana and that Wall made a lot of money through marijuana trafficking. Id. at 12. Government counsel also argued that a sentence of 90 months' incarceration was appropriate "[i]n light of the issues raised in the Motion to Vacate Judgment" and explained that the recommended sentence would provide for deterrence, would promote respect for the law, and would provide just punishment for the offense. Id. at 12-13. Defense counsel focused on the fact that a sentence of 90 months was a significant sentence for someone like Wall, who did not have a criminal record. Defense counsel also explained that Wall had a difficult experience during his time in pretrial detention. Id. at 13.

The Court accepted the parties' joint recommendation and imposed a sentence of 90 months of incarceration. Id. at 17. In explaining the reasons for its sentence, the Court mentioned the Sentencing Guidelines range briefly, but it focused more heavily on the other Section 3553(a) factors. The Court explained that that "Mr. Wall's actions here clearly fell outside of any legalized

form of distribution" and that he "transacted, at a minimum, what appears to be millions of dollars['] worth of marijuana and certainly thousands of kilograms of these unlawful marijuana transactions." Id. at 14-15. The Court made clear that "this is a serious offense that warrants a significant sentence" and that "the amounts and quantities that were being transacted here are extremely significant, so it is a significant breach of the law." Id. at 15. The Court also highlighted Wall's flight to Guatemala when he knew that charges were likely to be brought, explaining that there was a need for specific deterrence for "Mr. Wall whose conduct certainly at the time of the arrest, with the nature of fleeing and things of that nature, has not always suggested recognition of the wrongful conduct here." Id. The Court further explained:

> In terms of the appropriateness of the sentence here, I commend the parties for their cooperative resolution of a difficult situation. I do think that the 90-month sentence is sufficient, but not greater than necessary, to address the conduct in this case. As I said, this is a marijuana case but it's an enormous marijuana case, and the utter disregard for the law that was demonstrated here I think is adequately addressed by the 90-month sentence.

Id. at 20.

In addition to a sentence of 90 months' incarceration, the Court imposed a period of 5 years of supervised release. ECF No. 289 (Judgment Order).

### D. Wall's Motion for a Sentence Reduction Under 18 U.S.C. § 3582(c)(2).

In the instant motion, Wall seeks a reduction of his sentence from 90 months' incarceration to 71 months' incarceration. ECF No. 435. According to Wall, he is eligible for the retroactive application of Amendment 821, which would provide for a two-level reduction to his offense level because he did not have any criminal history points when he was sentenced in this case. See U.S.S.G. § 4C1.1. If the two-level reduction applied, Wall's Sentencing Guidelines range would be 63-78 months, based on a final offense level of 26 and a Criminal History Category of I. Wall's motion should be denied.

## ARGUMENT

The Court should deny Wall's motion for a sentence reduction because Wall's sentence in this case was not driven by the Sentencing Guidelines range, and his sentence of 90 months' imprisonment remains sufficient but not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

"The law closely guards the finality of criminal sentences against judicial change of heart." United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) (internal quotation omitted).  Once a sentence is imposed, a "court may not modify a term of imprisonment" unless one of several specified exceptions to this general rule apply.  See 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824 (2010) (noting that under 18 U.S.C. § 3582, the court generally "may not modify a term of imprisonment once it has been imposed").  One such exception is contained in 18 U.S.C. § 3582(c)(2), under which the Court can modify a sentence for a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been lowered by the Sentencing Commission if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.  Through U.S.S.G. § 4C1.1, the Sentencing Commission amended the Sentencing Guidelines and allowed for a potential two-level decrease in offense level if the defendant had zero criminal history points when sentenced and if certain exceptions did not make the defendant ineligible.  The amendment is retroactive in effect, with an effective date of November 1, 2023, and an implementation date of February 1, 2024.  Wall appears to be eligible for the retroactive application of a two-level decrease in his offense level.

Importantly, a reduction in sentence is not justified simply because a defendant is eligible for the decrease in his offense level.  The Court must also consider the sentencing factors in Section 3553(a) when determining whether a reduction in sentence is warranted.  See 18 U.S.C. §

3582(c)(2) ("… the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable …"); United States v. Marshall, 709 F. App'x 216 (4th Cir. 2018) ("In determining whether to reduce a defendant's sentence, the court must consider the applicable 18 U.S.C. § 3553(a) factors and whether a reduction would pose a danger to any person or the community, and may also consider the defendant's post-sentencing conduct.").

Here, the range established by the Sentencing Guidelines was not the driving force behind the parties' joint recommendation for a 90-month sentence.  Indeed, the advisory Guidelines range is merely one factor for the Court to consider at sentencing.  Section 3553(a), in pertinent part, provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in Section 3553(a), including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

In this case, Wall was convicted by a jury of a crime that carried a statutory minimum sentence of 10 years' incarceration.  Not only that, but the original PSR recommended a four-level increase to his offense level, concluding that he was an organizer or a leader of criminal activity

that involved five for more participants or was otherwise extensive.  ECF No. 281 ¶ 11.  Therefore, Wall would have been required to be sentenced to at least 10 years' incarceration, with an advisory Guidelines range of between 151 to 188 months.

But after assessing the issues raised in Wall's Motion to Vacate Judgment, the parties entered into the Post-Verdict Sentencing Agreement.  See ECF No. 291-1.  As part of that agreement, Wall agreed to withdraw his Motion to Vacate Judgment, and he received a substantial benefit in exchange.  Specifically, the Post-Verdict Sentencing Agreement allowed Wall to be sentenced below the 10-year mandatory minimum.  Wall's offense level was also reduced by six levels because the government agreed that it would not seek the four-level leadership enhancement and because the parties agreed that Wall satisfied the requirements for the safety valve.  See id. ¶ 8.  Thus, Wall's advisory Guidelines range dropped from 151 to 188 months, down to 78 to 97 months.  Moreover, the Post-Verdict Sentencing Agreement included a jointly recommended sentence of 90 months of imprisonment.  The parties agreed that this sentence was "the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a)."  Id. ¶ 11.  Therefore, Wall obtained the additional benefit of a sentencing recommendation from the government that was two-and-a-half years lower than the previously applicable mandatory minimum.

What is more, during the sentencing hearing, the parties justified their jointly recommended sentence of 90 months with minimal reference to the Sentencing Guidelines range. Instead, the parties focused mainly on the other Section 3553(a) factors, including the nature and circumstances of the offense, Wall's history and characteristics, and the need to provide for deterrence, promote respect for the law, and to provide just punishment.  The background and

history of this case could not be more clear—the Court did not sentence Wall to 90 months' imprisonment based on the advisory Guidelines range; rather, it did so because of all the other circumstances surrounding this case. The Court recognized as much, stating: "In terms of the appropriateness of the sentence here, I commend the parties for their cooperative resolution of a difficult situation. I do think that the 90-month sentence is sufficient, but not greater than necessary, to address the conduct in this case." ECF No. 343 at 20.

A sentence of 90 months' incarceration was the appropriate sentence in October 2022, and it remains the appropriate sentence today under the Section 3553(a) factors. Although the government commends Wall for his positive performance at the BOP, serving the entirety of his sentence remains necessary to reflect the seriousness of the offense, to address his history and characteristics, to promote respect for the law, and to provide adequate deterrence.[1]

The nature and circumstances of Wall's offense weigh heavily against a reduction in his sentence. Wall was at the top of a drug trafficking conspiracy that illegally shipped thousands of pounds of marijuana from California to Maryland, and then sold that marijuana to Maryland customers. For several years, the conspiracy generated millions of dollars from the illegal sale of massive quantities of marijuana. And Wall profited from it. Wall's Co-Defendants testified at trial that they paid Wall hundreds-of-thousands of dollars in cash for the marijuana he supplied to them, and when search warrants were executed, investigators seized over $850,000 in cash that was destined for Wall. As this Court found at sentencing, "Mr. Wall's actions here clearly fell outside of any legalized form of distribution" and that he "transacted, at a minimum, what appears to be millions of dollars['] worth of marijuana and certainly thousands of kilograms of these

---

[1]  Wall's positive disciplinary record permits him to earn good time credit towards the service of his sentence and will likely result in his release prior to serving the full 90-month sentence. See 18 U.S.C. § 3624(b)(1).

unlawful marijuana transactions." ECF No. 343 at 14-15. The Court made clear that "this is a serious offense that warrants a significant sentence" and that "the amounts and quantities that were being transacted here are extremely significant, so it is a significant breach of the law." Id. at 15. The nature and circumstances of Wall's crime is very serious, and a sentence of 90 months' incarceration is appropriate.

In addition to the nature and circumstances of the offense, Wall's flight to Guatemala and his failure to accept responsibility for his conduct cut against his request for a reduced sentence. At sentencing, the Court expressed its concern about Wall's preindictment flight, noting that Wall's actions have "not always suggested recognition of the wrongful conduct here." Id.

The need to promote respect for the law, to provide specific deterrence, and to provide just punishment also militate heavily in favor of leaving Wall's sentence intact. The conduct in this case involved Wall's significant role in a large drug trafficking conspiracy. Reducing Wall's sentence would send the wrong message to him regarding the seriousness of his crime, and it would undermine the need to promote respect for the law. It is of no moment that the laws surrounding marijuana are changing or that marijuana is becoming widely accepted for medical use, as Wall claims in his motion. Marijuana is part of highly regulated industry. Wall ignored those regulations and spent several years illegally transacting thousands of pounds of marijuana, which was worth millions of dollars. As the Court recognized less than two years ago when it sentenced Wall:

> In terms of the appropriateness of the sentence here, I commend the parties for their cooperative resolution of a difficult situation. I do think that the 90-month sentence is sufficient, but not greater than necessary, to address the conduct in this case. As I said, this is a marijuana case but it's an enormous marijuana case, and the utter disregard for the law that was demonstrated here I think is adequately addressed by the 90-month sentence.

ECF No. 343 at 20.

Jonathan Wall utterly disregarded the law, and a sentence of 90 months is appropriate.  He has not presented any reason for the Court to reach a different conclusion today.  The current sentence properly reflects the seriousness of Wall's offense, accounts for his failure to accept responsibility, promotes respect for the law, and provides for deterrence.  Accordingly, the Section 3553(a) factors weigh heavily against a reduction in Wall's sentence.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny the Defendant's Motion for a Sentence Reduction.

<div style="margin-left:40%">

Respectfully submitted,

Erek L. Barron
United States Attorney

By:          /s/ Anatoly Smolkin
Anatoly Smolkin
Assistant United States Attorney

</div>

Dated: July 1, 2024.